UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEFENDERS OF WILDLIFE,           )
1130 Seventeenth St., N.W.       )
Washington, D.C.  20036,         )
                                 )
THE HUMANE SOCIETY OF THE        )
UNITED STATES,                   )
2100 L Street, N.W.              )
Washington, D.C. 20037,          )
                                 )
OCEAN CONSERVANCY,               )
1300 19th Street NW, 8th Floor   )
Washington, DC 20036,            )
                                 )
and                              )
                                 )
REGINA ASMUTIS-SILVIA,           )
3 Jacqueline Lane                )
Plymouth, MA 02360,              )
                                 )
          Plaintiffs,            )
                                 )
     v.                          )
                                 )
CARLOS GUTIERREZ, Secretary,     )
Department of Commerce           )
14th Street and                  )
Constitution Ave., N.W.          )
Washington, D.C. 20230,          )
                                 )
and                              )
                                 )
JAMES BALSIGER,                  )
Acting Assistant Administrator   )
for Fisheries                    )
National Marines Fisheries Service )
1335 East-West Highway           )
Silver Spring, MD 20910,         )
                                 )
          Defendants.            )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.    This suit challenges the National Marine Fisheries

Service's ("NMFS") ongoing failure to impose marine vessel speed

limits that the agency itself recognizes are absolutely critical

to protect the North Atlantic right whale from extinction as a result of ship strikes. In response to an earlier Order from this Court NMFS represented that these speed regulations – which were proposed on June 26, 2006 – would be implemented by June 2007. Yet, as of this date, no regulations have been issued, and no speed restrictions are in place.

2. In light of this continued delay, in January 2008 Plaintiffs submitted a second Rulemaking Petition seeking speed restrictions on an interim basis until permanent regulations can be finalized. NMFS recently denied this Petition without explanation.

3. Given the agency's recognition that ship strikes are the leading cause of North Atlantic right whale deaths and one of the most critical threats to the species' survival and recovery, and thus that ship speed regulations are mandated by both the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1361, et seq., and the Endangered Species Act ("ESA"), 16 U.S.C. § 1531, et seq., the agency's failure to finalize these proposed speed restrictions constitutes agency action unlawfully withheld and unreasonably delayed, and the agency's most recent unexplained denial of Plaintiffs' Rulemaking Petition is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," in violation of the Administrative Procedure Act ("APA"). 5 U.S.C. § 706.

2

**JURISDICTION**

4.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

**PARTIES**

**A.    Plaintiffs**

5.    Plaintiff Defenders of Wildlife ("Defenders") is a national nonprofit organization with more than 530,000 members across the nation.  Defenders is dedicated to the protection and restoration of all native wild animals and plants in their natural communities.  Defenders is involved in numerous projects and actions to further the protection of the North Atlantic right whale.

6.    Defenders brings this action on behalf of its members, some of whom enjoy observing, photographing, and otherwise appreciating North Atlantic right whales in the wild, and studying the species in its natural habitat.  The interests of Defenders' members in observing, studying, and otherwise enjoying the North Atlantic right whale and its habitat are harmed by the defendants' failure to impose vessel speed limits in right whale habitat because vessel strikes are substantially contributing to the depletion and, unless corrective action is taken, the eventual extinction of the species.

7.    Plaintiff The Humane Society of the United States ("HSUS") is a national animal protection organization with more

3

than ten million members and constituents.  The HSUS is dedicated
to protecting wild and domestic animals by actively opposing
those projects, plans, and events that result in the cruel or
inhumane treatment of animals. The HSUS is involved in numerous
projects and actions to further the protection of the North
Atlantic right whale.

8.    The HSUS brings this action on behalf of its members,
some of whom enjoy observing, photographing, and otherwise
appreciating North Atlantic right whales in the wild, and
studying the species in its natural habitat.  The interests of
HSUS's members in observing, studying and otherwise enjoying the
North Atlantic right whale and its habitat are harmed by the
defendants' failure to impose vessel speed limits in right whale
habitat because vessel strikes are substantially contributing to
the depletion and, unless corrective action is taken, the
eventual extinction of the species.

9.    Plaintiff Ocean Conservancy is a non-profit science-
based environmental advocacy organization with over 150,000
members.  Ocean Conservancy is dedicated to protecting marine
wildlife species, including right whales and their habitats, and
to conserving coastal and ocean resources.  To further its goals,
Ocean Conservancy conducts policy-oriented research, promotes
public awareness, education, and citizen involvement in the
conservation of marine wildlife and their habitats, and supports

4

domestic and international programs for the protection of these resources.  Ocean Conservancy is involved in numerous projects and actions to further protection of the North Atlantic right whale.

10.  Ocean Conservancy brings this suit on behalf of its members, some of whom enjoy observing, photographing, and otherwise appreciating North Atlantic right whales in the wild, and studying the species in its natural habitat.  The interests of Ocean Conservancy's members in studying and otherwise enjoying the North Atlantic right whale and its habitat are harmed by defendants' failure to impose vessel speed limits in right whale habitat because vessel strikes are substantially contributing to the depletion and, unless corrective action is taken, the eventual extinction of the species.

11.  Plaintiff Regina Asmutis-Silvia, a resident of Plymouth, Massachusetts, has a Masters of Science in Biology, and has been involved in whale research, education and conservation for more than seventeen years. She is a member of the Atlantic Large Whale Take Reduction Team and the Stellwagen Bank National Marine Sanctuary Advisory Council.  Mrs. Asmutis-Silvia enjoys observing, photographing, and otherwise appreciating North Atlantic right whales in the wild, and studying the species in its natural habitat.  Her interests in studying and otherwise enjoying the North Atlantic right whale and its habitat are

harmed by the defendants' failure to impose vessel speed limits in right whale habitat because vessel strikes are substantially contributing to the depletion and, unless corrective action is taken, the eventual extinction of the species.

**B.    Defendants**

12.    Defendant Carlos Gutierrez is the Secretary of Commerce, and has ultimate responsibility for the programs of NMFS.

13.    Defendant James W. Balsiger is the Acting Assistant Administrator for Fisheries at NMFS, the agency within the Department of Commerce delegated the responsibility for implementing the MMPA and ESA provisions for highly endangered marine species such as the North Atlantic right whale.

**STATUTORY FRAMEWORK AND FACTS GIVING
RISE TO PLAINTIFFS' CAUSES OF ACTION**

**A.    Statutory and Regulatory Framework**

**1.    The Endangered Species Act**

14.    Reflecting an "explicit congressional decision to afford first priority to the declared national policy of saving endangered species," the ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." Tennessee Valley Auth. v. Hill, 437 U.S. 153, 180, 185 (1978). Recognizing that certain species of plants and animals "have been so depleted in numbers that they are in danger of or threatened with extinction," 16 U.S.C. § 1531(a)(2),

Congress enacted the statute to provide both "a means whereby the ecosystems upon which endangered and threatened species depend may be conserved, [and] a program for the conservation of such endangered species and threatened species . . . ." Id. § 1531(b). The principal duties the Act imposes upon the Secretary of Commerce for marine species such as the North Atlantic right whale have been delegated to NMFS. 50 C.F.R. § 222.101(a).

15. Under the ESA, a species is listed as "endangered" where it is "in danger of extinction throughout all or a significant portion of its range ...." 16 U.S.C. § 1532(6). The right whale has been listed an endangered species since the ESA was originally enacted.

16. Once listed, a species is entitled to a number of protections. Pursuant to Section 9 of the Act, it is unlawful for anyone to "take" an endangered species within the United States or the territorial sea of the United States, or upon the high seas, without a permit. 16 U.S.C. § 1538(a); 50 C.F.R. § 17.21. The term "take" includes to "harass, harm, pursue . . . wound, kill [or] to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

17. The Act provides for enforcement for violations of these prohibitions, including authorizing NMFS to promulgate particular regulations to protect against the take of listed

7

species.  16 U.S.C. § 1540(f).  The statute also requires that NMFS take affirmative steps to protect and recover listed species, including that NMFS formally designate and protect "critical habitat" for listed species, id. § 1533(a)(3), and "develop and implement plans . . . for the conservation and survival of listed species."  Id. § 1533(f)(1).

### 2.    The Marine Mammal Protection Act

18.  Recognizing that "certain species and population stocks of marine mammals are, or may be, in danger of extinction or depletion as a result of man's activities," Congress passed the MMPA in 1972 to insure that they are "protected and encouraged to develop to the greatest extent feasible . . . to maintain the health and stability of the marine ecosystem."  16 U.S.C. § 1361. The principal responsibilities that the Act imposes on the Secretary of Commerce are carried out by NMFS.  See 50 C.F.R. Part 216.

19.  The MMPA provides several protections for marine mammals.  The statute prohibits the unauthorized "take" of all marine mammals, including the North Atlantic right whale.  16 U.S.C. § 1372(a).  To "take" under the MMPA includes to "harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill, any marine mammal."  Id. § 1362(13).

20.  In order to protect marine mammals from "take," the MMPA authorizes NMFS, among other things, to "prescribe such

regulations as are necessary and appropriate to carry out the purposes of this subchapter." Id. § 1382(a).

**B.   Relevant Facts**

**1.   The North Atlantic Right Whale And The Grave Threat That Ship Strikes Pose To The Continued Existence Of The Species**

21.   Up to 55 feet long and weighing up to 70 tons, the North Atlantic right whale (Eubalaena glacialis) has a stocky body, generally black coloring, and a large head marked with individually distinctive callosities.  The right whale primarily feeds on zooplanktons, often by skimming along the surface of water with its mouth open, filtering prey through its baleen.

22.   Prized for its oils and baleen, the right whale's ironic name derives from its slow speed and occupation of surface waters, for which whalers considered it the "right" whale to hunt.  Over a thousand years of commercial whaling nearly drove the species to extinction, and since the early twentieth century the North Atlantic right whale has been one of the rarest of the large whales worldwide.

23.   Historically there were two separate right whale populations in the Atlantic, an eastern population once found from the coast of northern Europe to the northwest coast of Africa, and the western population which inhabits the waters off the East coast of the United States and Canada.  The eastern population is now nearly, if not completely, extinct, and the

western population, at issue here, contains less than four hundred individuals.

24.    North Atlantic right whales are most often found in coastal or shelf waters, although movements over much deeper waters have been documented.  In the western North Atlantic, right whales migrate to higher latitudes during spring and summer, with the majority returning to summer feeding and nursery grounds in New England waters, including the Great South Channel to the east of Cape Cod, Massachusetts, and Cape Cod Bay, and north to the Bay of Fundy and Scotian Shelf.  It is unknown where much of the population spends the winter, although a portion moves to calving grounds off the coast of Georgia and Florida and right whales have been found year round in the waters off New England.

25.  In its most recent Stock Assessment, NMFS estimated that there are fewer than 325 North Atlantic right whales remaining, and that the population is declining.  Leading scientists studying right whales have estimated that the average number of whales dying each year is likely around 14 animals, which represents an annual four percent population loss.  Because it takes female right whales nine to ten years to reach reproductive maturity and they give birth to only one calf approximately every four years, the recent losses have led to a marked decrease in the reproductive capacity of the population.

10

As a result, the population is unable to reproduce fast enough to offset annual losses.

26. Given these statistics and trends, NMFS explained in its most recent Right Whale Recovery Plan that "[t]here is reason for serious concern about the future of North Atlantic right whales." As NMFS has stated elsewhere, "[g]iven its very small population size, limited distribution, and low reproductive rate, any loss of a right whale is expected to affect the species' survival and recovery by further limiting numbers, distribution and ability to reproduce."

27. Right whales are slow moving and spend a large amount of time at or near the surface resting, feeding, nursing, and socializing. Despite their size, right whales are difficult to spot because of their dark coloration and low profile.

28. As a result, and as NMFS has acknowledged, collisions with ships are the greatest known threat to the right whale. For example, during a twelve-month period several years ago three pregnant females and three additional right whales were struck and killed by ships. Three more right whale deaths were documented in 2006, one from a ship strike. NMFS has explained that unless the frequency of these collisions is significantly reduced, "biological extinction could easily occur within the next couple of generations."

### 2.    The Need For Vessel Speed Limits To
### Reduce Ship Strike Risks

29.    One of the principal measures necessary to reduce ship strike risks is to slow vessels down when traveling in right whale high use areas.  Right whales regularly inhabit waters traversed by thousands of ships making hundreds of thousands of port calls in the United States annually.  Scientific studies have demonstrated that collisions causing lethal or serious injuries to whales are absent or very rare when vessels travel at less than 10 knots, infrequent at speeds between 10 and 13 knots, and most common at speeds of 14 knots or higher.

30.    In 2001, a NMFS commissioned Report concluded that vessel speed limits should be imposed to reduce ship strike risks.  Three years later, in 2004, NMFS published an Advance Notice Of Proposed Rulemaking ("ANPR") for Right Whale Ship Strike Reduction, beginning the regulatory process to put such restrictions in place.  69 Fed. Reg. 30,857 (2004).  In the ANPR NMFS acknowledged that present population models indicate that the loss of "even a single individual" whale may be critical to whether the species can avoid extinction.

31.  During its analysis of the utility of ship speed restrictions, NMFS recognized that failing to impose these requirements on vessels traveling through right whale habitat "would not meet the requirements of the applicable statutes, ESA and the MMPA [and] NMFS would not be able to fulfill its mandate

12

to protect the endangered North Atlantic right whale as specified in these two statutes." Nonetheless, a full year later the agency had still not even issued Proposed Regulations.

### 3. Plaintiffs' First Rulemaking Petition, NMFS's Proposed Ship Speed Regulations, And The Agency's Earlier Representations To This Court

32. Frustrated by NMFS's failure to move the regulatory process forward, and concerned about the ongoing ship strike crisis in the meantime, in May 2005 Plaintiffs and others submitted a formal Rulemaking Petition to NMFS requesting interim regulations to reduce the risk of ship strikes until permanent regulations could be promulgated. The Rulemaking Petition specifically sought protections for vulnerable and biologically important mothers and calves during the calving season while final regulations were being completed.

33. NMFS denied the Petition on the grounds that interim regulations were unnecessary in light of the agency's progress on permanent ship speed restrictions. 70 Fed. Reg. 56,884 (2005). NMFS also asserted that interim regulations would divert agency resources that were needed for timely adoption of permanent regulations.

34. Plaintiffs subsequently filed suit in this Court challenging the Petition denial on the grounds that it was

arbitrary and capricious and contrary to law in violation of the APA, 5 U.S.C. § 706.  Defenders of Wildlife v. Gutierrez, No. 05-2191(PLF)(D.D.C.).

35.  After Plaintiffs filed their motion for summary judgment, NMFS finally issued Proposed Regulations for mandatory ship speed restrictions in right whale habitat.  71 Fed. Reg. 36,299 (June 26, 2006).  NMFS then asked this Court to deem Plaintiffs' claim "prudentially moot" on the ground that final ship speed regulations would issue promptly.

36.  The Court subsequently Ordered that NMFS "shall inform the Court within 10 days of the date of this Order when the final rule will issue."  NMFS responded by representing that the final rule should issue by no later than June 2007 – now one year ago. NMFS's counsel repeated that representation during the March 2007 oral argument on the parties' cross-motions for summary judgment. The Court subsequently held that NMFS's denial of the May 2005 Rulemaking Petition was not arbitrary and capricious.

### 4.   Plaintiffs' Second Rulemaking Petition

37.  After the agency had missed the deadline it had provided to this Court by more than six months, in January 2008 Plaintiffs submitted a Second Rulemaking Petition – once again requesting interim ship speed restrictions until the agency could finalize the permanent regulations that had been proposed in 2006 in response to Plaintiffs initial lawsuit.  Plaintiffs also

14

appealed this Court's decision upholding NMFS's denial of the
first Rulemaking Petition.

38.   NMFS ignored the Second Rulemaking Petition until mid-
May 2008, when the Court of Appeals had scheduled oral argument
for Plaintiffs' appeal.  At that appellate argument NMFS, through
its counsel, announced for the first time that the agency was
denying the Second Rulemaking Petition.  Plaintiffs received the
Second Rulemaking Petition denial in the mail later that day.
See Attachment (Second Petition Denial).

39.   In the Second Petition Denial NMFS again "acknowledges
that ship strikes are the greatest known threat to the recovery
of North Atlantic right whales," and recognizes the need for
regulations requiring "vessels to limit speeds in specific right
whale aggregation areas."  Yet, the agency again "determined that
interim rulemaking is not warranted at this time," without
explaining either when the outstanding proposed regulatory
process would be completed, or why, in light of the continuing
delay, interim regulations are not appropriate.

40.   As of today the agency has still not indicated when –
if ever - any ship speed restrictions will be put in place to
protect the North Atlantic right whale from continued ship
strikes.

## PLAINTIFFS' CLAIMS FOR RELIEF

### CLAIM ONE

### (5 U.S.C. § 706(1))

41.   By failing to finalize the June 2006 Proposed Regulations imposing ship speed restrictions in right whale habitat – regulations that the agency itself recognizes are necessary to fulfill the mandates of both the MMPA and the ESA – NMFS is unlawfully withholding and unreasonably delaying agency action in violation of the APA.   5 U.S.C. § 706(1).

42.   These legal violations are injuring Plaintiffs in the manner described in paragraphs 4-11 above.

### CLAIM TWO

### (5 U.S.C. § 706(2))

43.   By denying Plaintiffs' Second Rulemaking Petition based on the long-standing Proposed Regulations, without providing any explanation and without indicating when – if ever – those regulations will be finalized, NMFS has acted arbitrarily, capriciously, and contrary to law in violation of the APA.   5 U.S.C. § 706(2)(a).

44.   These legal violations are injuring Plaintiffs in the manner described in paragraphs 4-11 above.

16

Wherefore, Plaintiffs respectfully request that this Court:

(1) declare that defendants have violated the APA;

(2) set aside and remand the Second Rulemaking Petition denial;

(3) Order that within thirty (30) days NMFS shall issue either (a) final ship speed restrictions or (b) interim ship speed restrictions until permanent regulations can be finalized;

(4) award Plaintiffs their costs, attorneys' fees, and other disbursements for this action, including any expert witness fees; and

(5) grant Plaintiffs such other and further relief as this Court may deem just and proper.


Respectfully submitted,


_____
Howard M. Crystal (D.C. Bar No. 446189)


_____
Eric R. Glitzenstein (D.C. Bar No. 358287)

Meyer Glitzenstein & Crystal
1601 Connecticut Ave., N.W., Suite 700
Washington, D.C.  20009
(202) 588-5206

Of Counsel:
Andrew Hawley (Cal. Bar No. 229274)
Defenders of Wildlife
1130 Seventeenth Street, N.W.
Washington, D.C.  20036

June 26, 2008          Attorneys for Plaintiffs

17

# ATTACHMENT

UNITED STATES DEPARTMENT OF COMMERCE
**National Oceanic and Atmospheric Administration**
NATIONAL MARINE FISHERIES SERVICE
1315 East-West Highway
Silver Spring, Maryland 20910

THE DIRECTOR

MAY - 8 2008

Mr. Jonathan Lovvorn
Vice President, Animal Protection Litigation
The Humane Society of the United States
2100 L Street N.W.
Washington, D.C. 20037

Dear Mr. Lovvorn:

This is in response to your organization's petition to the Department of Commerce to issue interim vessel speed limit regulations until it finalizes and fully implements measures currently being considered to protect North Atlantic right whales from ship strikes. The National Oceanic and Atmospheric Administration's National Marine Fisheries Service (NMFS) has reviewed the petition and information relative to ship strikes of right whales and has determined that interim rulemaking is not warranted at this time.

NMFS acknowledges that ship strikes are the greatest known threat to the recovery of North Atlantic right whales. For this reason, NMFS developed a ship strike reduction program, consisting of a number of components, aimed at addressing the threat. Part of the program involves rulemaking that would require certain vessels to limit speeds in specific right whale aggregation areas. NMFS decided to pursue rulemaking with full public notice and comment, environmental analysis, and interagency review. NMFS undertook that process, but it is not yet complete.

Thank you for your interest in this important matter.

Sincerely,

James W. Balsiger, Ph.D.
Acting Assistant Administrator
for Fisheries

THE ASSISTANT ADMINISTRATOR
FOR FISHERIES


Printed on Recycled Paper

JS-44
(Rev. 2/01 DC)

# CIVIL COVER SHEET

08-1107
PLF

## I (a) PLAINTIFFS

Defenders of Wildlife, The Humane Society of the United States, Ocean Conservancy, Regina Asmutis-Silvia

### DEFENDANTS

Carlos Gutierrez, Secretary, Department of Commerce and James Balsiger, Acting Asst, Administrator, National Marine Fisheries Service

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    11001
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: In land condemnation cases, use the location of the tract of land involved.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Howard M. Crystal, Eric R. Glitzenstein, Meyer Glitzenstein & Crystal, 1601 Conn. Ave., N.W. Suite 700, Washington, D.C. 20009 (202) 588-5049

Case: 1:08-cv-01107
Assigned To : Friedman, Paul L.
Assign. Date : 6/26/2008
Description: Admn Agency Review

## II BASIS OF JURISDICTION (SELECT ONE BOX ONLY)

- O 1 U.S. Government Plaintiff
- ⊙ 2 U.S. Government Defendant
- O 3 Federal Question (U.S. Government Not a Party)
- O 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY!)
(SELECT ONE BOX FOR PLAINTIFF AND ONE FOR DEFENDANT)

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | ⊙ 4 | ⊙ 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Select one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### O A. Antitrust
- ☐ 410 Antitrust

### O B. Personal Injury/ Malpractice
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### Ⓒ C. Administrative Agency Review
- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

### O D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## O E. General Civil (Other)    OR    O F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

4

| ○ G. Habeas Corpus/2255 | ○ H. Employment Discrimination | ○ I. FOIA/PRIVACY ACT | ○ J. Student Loan |
|---|---|---|---|
| ▢ 530 Habeas Corpus-General<br>▢ 510 Motion/Vacate Sentence | ▢ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ▢ 895 Freedom of Information Act<br>▢ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ▢ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. Labor/ERISA (non-employment) | ○ L. Other Civil Rights (non-employment) | ○ M. Contract | ○ N. Three-Judge Court |
|---|---|---|---|
| ▢ 710 Fair Labor Standards Act<br>▢ 720 Labor/Mgmt. Relations<br>▢ 730 Labor/Mgmt. Reporting & Disclosure Act<br>▢ 740 Labor Railway Act<br>▢ 790 Other Labor Litigation<br>▢ 791 Empl. Ret. Inc. Security Act | ▢ 441 Voting (if not Voting Rights Act)<br>▢ 443 Housing/Accommodations<br>▢ 444 Welfare<br>▢ 440 Other Civil Rights | ▢ 110 Insurance<br>▢ 120 Marine<br>▢ 130 Miller Act<br>▢ 140 Negotiable Instrument<br>▢ 150 Recovery of Overpayment & Enforcement of Judgment<br>▢ 153 Recovery of Overpayment of Veteran's Benefits<br>▢ 160 Stockholder's Suits<br>▢ 190 Other Contracts<br>▢ 195 Contract Product Liability | ▢ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Violations of the APA, 5 USC sec. 706 in connection with denial of rulemaking petition and failure to issue final regulations

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ▢ ACTION UNDER F.R.C.P. 23    DEMAND $ _____ Select YES only if demanded in complaint    JURY DEMAND: ▢ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY** (See instruction)    ☒ YES    ▢ NO    If yes, please complete related case form.

DATE 6/26/08    SIGNATURE OF ATTORNEY OF RECORD

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.